UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                                            5:07-cr-40-Oc-10GRJ

ALFONSO RAMIREZ-MONROY
_____

### REPORT AND RECOMMENDATION[1]

Pending before the Court is Defendant's Motion to Suppress Evidence (Doc. 15.)

The United States has filed a Response in Opposition To Defendant's Motion To

Suppress And Memorandum Of Law (Doc. 24.)  An evidentiary hearing was held before

the undersigned on December 6, 2007 and, accordingly, the matter is ripe for review.

For the reasons discussed below Defendant's Motion to Suppress Evidence is due to

be **DENIED**.

### I.  Introduction

Defendant is charged in this case in a two count indictment with transportation of

illegal aliens and illegal entry of an alien in violation of Title 8, United States Code,

§ 1324(a)(1)(A)(ii) and (B)(i) and Title 18, United States Code, § 2 (Doc 9.)

The events that led to Defendant being charged began on September 6, 2007 at

approximately 11:30 a.m. when Officer Steven McDonald initiated a traffic stop on the

1996 Chevrolet Suburban that Defendant was driving.  Defendant, who was the driver

of the vehicle, was one of five individuals located in the vehicle, all of whom were illegal

---

[1]  Specific, written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local
Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.
Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from
attacking factual findings on appeal.

aliens.  After the traffic stop, Defendant made incriminating statements and a search

conducted subsequent to arrest netted $2600.00 in United States Currency.  Defendant

contends that the statements and currency should be suppressed.  With regard to

Defendant's request to suppress the statements and the physical evidence, Defendant

argues Officer McDonald lacked the required reasonable suspicion of criminal activity to

stop the vehicle and further, the statements and currency constitute "fruits of the illegal

stop of his vehicle."

## II.  Evidence and Testimony

The United States called Officer Steven McDonald as a witness.  The Defendant

did not present any evidence.

On September 6, 2007, Officer Steven McDonald was serving as a patrol agent

with the United States Border Patrol.  Officer McDonald is the agent in charge of the

Tampa Border Patrol station and has served in that position since 1996.  During Officer

McDonald's 24 years with the Border Patrol, he has served in Florida, Texas and

Arizona.  Officer McDonald's experience includes patrolling in Fort Hancock, Texas, a

city on the border of the United States and Mexico.  Additionally, he has served in

Nogalas, Arizona, a city on the Mexican border, approximately 65 miles south of

Tucson.  During his service in Texas and Arizona, Officer McDonald engaged in

hundreds of stops involving aliens based upon reasonable suspicion of criminal activity.

In 1996, Officer McDonald was reassigned to the Tampa Border Patrol office.

In March of 2004, Officer McDonald began conducting highway operations

specifically to assess and target actual human smuggling that is occurring on Florida's

highways, specifically, Interstate 75.  During the course of the operation, Officer

McDonald learned that I-75 was a corridor exploited daily by smuggling organizations to transport illegal aliens into the Florida area from Mexico.  Smugglers would cross illegal aliens through the desert and into staging areas in Houston and Phoenix.  After the staging process, illegal aliens are then transported in high occupancy vehicles to their intended destination utilizing I-75.

Primarily, Officer McDonald's operation targeted the northern counties of Hernando and Sumter.  This area on I-75, which was specifically targeted, generally covered the area from mile marker 321 south to mile marker 307.  Officer McDonald testified that based upon his experience, illegal aliens are coming to this area specifically to work in the agricultural, service or construction industries.

According to Officer McDonald, the Border Patrol operation monitored both southbound and northbound traffic.  Border Patrol monitored the northbound traffic for two reasons.  First, smuggling organizations transport people into Florida and then take the remaining passengers on to locations throughout the United States.  In the past, Border Patrol has intercepted vehicles where smugglers have dropped individuals in Florida and then transported the remaining passengers to another state.  Second, northbound traffic is monitored because situations have arisen where a financial agreement between the smuggler and the smuggled alien went awry.  In some instances the smuggler would not deliver the individual to the intended destination because of non-payment and would then be taken to a staging area until the financial dispute was settled.

During the period from March 2004 until September 6, 2007, Officer MacDonald testified that 96 traffic stops had been conducted by Border Patrol agents in the

Hernando/Sumter/Pasco county area on the I-75 corridor.  All 96 stops were focused upon criminal smuggling events.  Of the 96 stops, 93 stops actually involved smuggling events.  Most of the smugglers, as well as the drivers of the vehicles, were Mexican nationals.  Of the remaining three stops, illegal aliens were discovered.

Officer McDonald testified extensively about similarities among the smuggling operations that he has observed during the operation. One of the most common characteristics of a smuggling operation is that illegal aliens are smuggled in large capacity vehicles.  In addition to the use of large capacity vehicles, many of the smugglers, as well as the drivers, are Mexican nationals.  When determining whether a vehicle may be involved in a smuggling operation, one of the things Officer McDonald looks for is whether the exterior of the vehicle is neglected. Officer McDonald testified that smugglers usually keep the vehicle mechanically sound while frequently ignoring the condition of the exterior of the vehicle.  Officer McDonald also testified that based upon his extensive experience, it is well known that Arizona is the most prevalent area for staging aliens for transport throughout the United States after the aliens have been smuggled across the border into the United States. In addition to using high capacity vehicles, Officer McDonald testified that it is very common for smugglers to employ window tinting to minimize the ability to inspect the vehicle from the exterior.  Lastly, while there is no set time for smuggling operations, Officer McDonald did testify that previously smuggling events along I-75 had been occurring between 7:30 a.m. and 9:30 a.m. but recently had shifted to later in the morning to avoid detection.

On September 6, 2007, Officer McDonald was located south of mile marker 318 on I-75 in Sumter County.  At approximately 11:30 a.m. a Border Patrol agent located at

mile marker 312 notified Officer McDonald that a dark colored Suburban was heading north that looked suspicious.  Approximately, five minutes later, a dark colored Suburban passed Officer McDonald's location.  The Suburban was traveling north on I-75 in the left hand lane.  Officer McDonald observed two Hispanic males seated in the front of the vehicle and what appeared to be two occupants in the back seat.  Officer McDonald noted that the window tint on the back of the vehicle[2] appeared to be darker from the tint on the front of the vehicle and that the occupants in the rear appeared as silhouettes.  Officer McDonald was unable to determine the ethnicity or the sex of the rear passengers due to the tinting.  However, Officer McDonald was able to observe that the vehicle was in a dirty, unkempt state with no observable luggage.  As the vehicle passed, Officer McDonald noted an Arizona license plate.[3]  The vehicle was traveling 70 miles per hour and was actively passing traffic.

Officer McDonald pulled onto the roadway and within a couple of miles caught up with the vehicle.  While traveling behind the Suburban, the appearance of the vehicle's peeling paint[4] caught Officer McDonald's attention.  Officer McDonald requested and received a registration and warrants check on the Arizona license plate.  The license plate and registration check revealed a registered address to an apartment in Mesa, Arizona.  Based upon Officer McDonald's experience in Arizona and Florida, Mesa is an identified area of significant smuggling activity. According to Officer McDonald, Mesa,

---

[2]  Government Ex. 1 (photograph of side of vehicle after traffic stop).

[3]  Government Ex. 3 (photograph of Arizona license plate).

[4]  Government Ex. 2 (photograph of rear and side of vehicle at traffic stop).

which is part of the greater Phoenix metropolitan area, is a known staging area for smuggling aliens.  After smuggling individuals across the border, aliens will be kept at apartments or residences in the Mesa area until financial arrangements are resolved. Once the financial agreement is in place, the aliens are then removed and transported to the intended destination.

During the course of the license plate and warrants check, the vehicle continued to actively pass slower traffic.  Officer McDonald pulled alongside the vehicle to observe the passenger side and was unable to see inside the passenger compartment due to the window tint and dirt.  Tinting on one side of the vehicle appeared much darker than on the other.  The vehicle was riding normally and did not appear to be heavily loaded.

While driving alongside the vehicle, Officer McDonald was able to further observe the driver and front passenger.  Both were Hispanic males and their grooming indicated to Officer McDonald (based upon his extensive experience) that they were recent arrivals in the United States from Mexico.  The driver and front passenger did not acknowledge Officer McDonald, which he characterized as "appearing nervous."  When Officer McDonald slowed his vehicle Defendant also slowed the speed of his vehicle. Defendant then signaled and pulled in front of the officer behind slower traffic. Officer McDonald testified that it appeared to him that Defendant was attempting to have the officer go around him.  Officer McDonald further testified that Defendant's driving habit had changed, in that he pulled in front, slowed down and remained in the slower lane rather than traveling the speed limit and actively passing traffic as the driver had been doing before Officer McDonald pulled alongside of the Suburban.  The Defendant did not, however, attempt to exit the interstate or take any evasive action.

Officer McDonald then initiated a traffic stop on Defendant's vehicle at mile marker 329 concluding that based upon all of these circumstances there may be a smuggling operation taking place. During the traffic stop Officer McDonald discovered that Defendant and his passengers were illegal aliens.  The were five people in total in the vehicle.  Defendant had an alias in the form of a Mexican driver's license and two of the passengers were from Honduras.  The Defendant made statements at roadside and post *Miranda.*  After a search incident to arrest, $2600.00 in United States Currency was located.

### III.  ANALYSIS OF ISSUES

### A.             Suppression of the identity

In Defendant's Motion to Suppress (Doc. 15), Defendant does not suggest that the Court should suppress the identity or "body" of the Defendant.  "The 'body' or identity of a defendant in a criminal proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."[5] At the evidentiary hearing, the United States and Defendant agreed that the sole issue before the court was the admissibility of evidence that flowed from the traffic stop and not the identity of the Defendant.  Accordingly, that issue is not before the Court and the Court will turn to the issue regarding the constitutionality of the traffic stop.

---

[5]  INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984).

7

**B.      The Traffic Stop Was A Reasonable Suspicion Stop**

Defendant contends that his statements and the United States currency found in the vehicle should be suppressed because the Border Patrol officer lacked reasonable suspicion of criminal activity for the stop and that the statements and evidence obtained are "fruit of the poisonous tree."  While the  Defendant's argument is not without superficial appeal, based upon a careful scrutiny of the events that led to the stop the Court is unpersuaded that Officer McDonald stopped the vehicle based merely upon a "hunch" as opposed to stopping the vehicle based upon articulable facts and reasonable suspicion.

The Fourth Amendment forbids stopping vehicles at random to inquire if they are carrying aliens who are illegally in the country, and it also forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens.[6]  Specifically with regard to Border Patrol stops the Supreme Court in *Brignoni-Ponce* established a number of factors courts should consider in determining whether there were "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country."[7]  Factors which may be considered inlcude: (1) the characteristics of the area in which the vehicle is stopped; (2) patterns of traffic on the road; (3) proximity to the border; (4) previous experiences with alien trafficking in the area; (5) information about recent border crossings; (6) attempts to evade detection;

---

[6]  United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975).

[7] *Id..*

8

(7) appearance of the vehicle; (8) appearance and behavior of the driver and passengers; and (9) other relevant information.[8]  In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling.[9] There is no specific number or combination of factors which automatically rise to the level of reasonable suspicion.  Instead, it is the overall picture created by the sum total of the factors which must be considered and a totality of the particular circumstances governs the resolution of each case.[10]

Officer McDonald enumerated several factors and assessed those factors in light of his extensive experience in determining that the Defendant's vehicle contained aliens.  Interstate 75, is a known corridor for smuggling activities based upon the preceding three year operation conducted by Border Patrol.  More specifically, the Defendant's vehicle was observed at mile marker 312 and was stopped at mile marker 329, an established target area for illegal aliens coming to this area for work.

Officer McDonald's suspicions were heightened by the fact that the Defendant was driving a Suburban,[11] a large capacity vehicle typical of the types of vehicles used to transport illegal aliens.  In addition to the fact that the vehicle was a Suburban, the vehicle displayed an out-of-state Arizona license plate[12] and was registered to an

---

[8] *Id.* at  884-885.

[9] Terry v. Ohio, 392 U.S. 1, 27 (1968).

[10] Brignoni-Ponce, 422 U.S. at  885; United States v. Cruz -Hernandez, 62 F.3d 1353, 1355 (11th Cir. 1995).

[11] Government Ex. 1 (Photograph of vehicle at traffic stop).

[12] Government Ex. 3 (Photograph of license plate).

individual in Mesa, Arizona, a known staging area for smuggling.  Moreover, the condition of the vehicle raised the suspicion of Officer McDonald. The vehicle was in a dirty, unkempt state, with peeling paint, which is consistent with the fact that smugglers usually are more interested in keeping a vehicle mechanically sound than taking care of the exterior aesthetics of the vehicle.

In addition to the observation of the vehicle itself, Officer McDonald observed that both the driver and the front seat passenger of the vehicle were Hispanic, each of whom had the type of haircuts typical of Mexican laborers who have recently entered the United States. Although the demeanor of the occupants of the vehicle was not dispositive,[13] Officer McDonald found it highly suspicious that the driver and passenger looked straight ahead and did not acknowledge the presence of Officer McDonald when he drove alongside the vehicle.  Based upon Officer McDonald's extensive experience with alien smuggling operations he interpreted these actions as evidence of "nervousness" on the part of the Defendant.

Officer McDonald also observed at least four people in the vehicle, two males in the front and two silhouettes in the back.  The tinting on the vehicle appeared darker on the back than on  the front of the Suburban.[14]  Based upon Officer McDonald's experience, he is aware that smugglers commonly tint the windows of a vehicle to defeat the ability of law enforcement to observe the inside of the vehicle.

---

[13] <u>United States v. Escamilla</u>, 560 F.2d 1229, 1233 (5th Cir. 1977)(the actions of a defendant in staring straight ahead cannot by itself weigh in the balance of whether criminal activity is taking place).

[14]  Government Ex. 1 (Photograph of side of vehicle at traffic stop).

Further, the vehicle lacked any observable luggage, a fact which is inconsistent with a cross country trek and consistent with a human smuggling event.  Officer McDonald also observed a change in the driving habit of the Defendant from actively passing vehicles to slowing the vehicle with an apparent attempt to have the officer pull around him.  Finally, the traffic stop occurred at 11:30 a.m., the time frame when smuggling events had recently been occurring.

Officer McDonald has 24 years of experience with Border Patrol in removing and detecting aliens and three years of experience in this specific location on I-75 detecting alien smuggling operations.

Viewing the totality of the circumstances and applying the *Brignoni-Ponce* factors the Court concludes that Officer McDonald had reasonable suspicion to stop the Suburban based upon specific articulable facts, together with rational inferences, that the Defendant's vehicle contained aliens.

The Court's conclusion is further supported by *United States v. Cruz-Hernandez*,[15] an Eleventh Circuit case involving similar facts. In *Cruz-Hernandez* the defendant challenged the constitutionality of a stop made by a border patrol agent to check citizenship in a Florida coastal community.  The Eleventh Circuit affirmed the trial court's decision that the Border Patrol agent had reasonable suspicion to stop the defendant's vehicle. The factors enumerated by the Border Patrol agent in *Cruz-Hernandez* to justify the stop included the fact that: (1) the defendant was dressed in clothes typical of undocumented aliens working in the local fields; (2) the defendant

---

[15]  62 F.3d 1353 (11th Cir. 1995).

11

quickly averted his gaze, jerked his head to the front and looked nervous; (3) the defendant appeared to be Hispanic; (4) the defendant was driving a van typical of those that transport large numbers of undocumented aliens; (5) the vehicle displayed an out of state license plate; (6) many undocumented aliens lived near the location of the traffic stop; and (7) there had been complaints of undocumented aliens living and working in the area.[16]

In the instant case, similar to *Cruz-Hernandez,* Defendant and his passenger were groomed in a manner that was typical of Mexican laborers who had recently entered the United States. Defendant appeared Hispanic and was driving a Suburban typical of the type of large capacity vehicles used by smugglers to transport large numbers of aliens.  The Suburban had an Arizona license plate registered in Mesa, Arizona, a known staging area for alien smuggling operations. The area of I-75 in which the Defendant was stopped is an area that has been established as a corridor for human smuggling.  Moreover, Officer McDonald noted the window tint on the dirty, unkempt vehicle, the number of passengers and the obscured passenger compartment. The vehicle did not have any observable luggage, which would not be typical of a trip from Arizona to Florida. Lastly, the change of driving pattern by Defendant when Officer McDonald approached the vehicle further supported his reasonable suspicion.

Accordingly, for these reasons, the Court concludes that based upon these articulable facts viewed in conjunction with Officer McDonald's extensive experience and knowledge in detecting alien smuggling operations - and consistent with the factors

---

[16] Cruz-Hernandez, 62 F.3d 1355-56.

enumerated in *Brignoni- Ponce* and *Cruz-Hernandez* - Officer McDonald had

reasonable suspicion to make an investigatory stop of  Defendant's vehicle and,

therefore, because the stop was constitutionally based upon reasonable suspicion

Defendant's motion to suppress should be denied.

## IV.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendant's

Motion to Suppress Evidence should be **DENIED**.

**IN CHAMBERS** at Ocala, Florida, this 30th day of January, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
Honorable Wm. Terrell Hodges
Senior United States District Judge

United States Attorney (Hansen)
Counsel for Defendant